GRUBER, Oscar L., Shatz, Raymond and Greenstein, Larry, Suing on Behalf of Themselves and All Other Similarly Situated

v.

**PRICE WATERHOUSE, Appellant.**

No. 89–1656.

United States Court of Appeals, Third Circuit.

Argued April 4, 1990.

Decided Aug. 23, 1990.

Rehearing and Rehearing In Banc Denied Sept. 24, 1990.

*rities Litigation,* 843 F.2d 1537 (3d Cir.) (in banc), *cert. denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988) should be applied retroactively or prospectively only, this time in an action by a purchaser of securities against an accounting firm, Price Waterhouse, a non-seller of the securities, for its preparation of the seller's financial reports. Because we hold that the factors enunciated by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) are satisfied, we concur with the district court's prospective only application of *Data Access* in this particular case. We will therefore affirm the district court's judgment granting in part and denying in part Price Waterhouse's motion for summary judgment.

I.

John G. Harkins, Jr. (argued), Patricia L. Freeland, Robert L. Hickok, Robert S. Natalini, Pepper, Hamilton & Scheetz, Philadelphia, Pa. (Rodman W. Benedict, Associate Gen. Counsel, New York City, of counsel), for appellant.

Richard B. Dannenberg (argued), David C. Harrison, Jill Rosell, Lowey, Dannenberg, Bemporad, Brachtl & Selinger, P.C., New York City, Leonard Barrack, Gerald Rodos, Anthony J. Bolognese, Barrack, Rodos & Bacine, Philadelphia, Pa., for appellees.

Before MANSMANN and SCIRICA, Circuit Judges, and SMITH, District Judge.[*]

OPINION OF THE COURT

MANSMANN, Circuit Judge.

By a certified question from the district court, we are asked to address, once again, the question of whether the one-year/three-year limitations period established for section 10(b) and rule 10b–5 claims in *In re Data Access Systems Secu-*

AIA Industries, Inc., is a holding company for several subsidiaries involved in the transportation industry. In its initial public offering on July 21, 1983, AIA utilized a prospectus that contained representations that it was involved primarily in providing charter airline service to the gaming industry in Atlantic City, New Jersey. Soon after the public offering, AIA underwent a change in the major thrust of its business. Instead of focusing on the specialized airline services indicated in its prospectus, AIA attempted to compete with regularly scheduled air carriers by providing regional scheduled flights operating out of Philadelphia and Atlantic City. Commencing the last quarter of fiscal 1983, the company experienced substantial losses apparently attributable to the change in business to a regularly scheduled airline. AIA incurred a loss from operations of nearly 9 million dollars for the 1983 fiscal year ending November, 1983. AIA was also unable to pay its excise and employment taxes for the fourth quarter of 1983. In July 1984, AIA filed for reorganization under Chapter 11 of the Bankruptcy Code.

* Honorable D. Brooks Smith of the United States District Court for the Western District of Pennsylvania, sitting by designation.

Arising out of the initial public offering and the subsequent chain of events, in May 1984, several class action complaints were filed against AIA, various officers and directors and the stock underwriters by purchasers of common stock bought in the public offering.[1] In their complaints, the plaintiffs focused on AIA's alleged failure to disclose, in the public offering documents, its change of services from a specialized carrier to a regularly scheduled regional carrier. Also alleged was the failure to account for the increased expenses as a result of the change in business. The class action suits were consolidated as *In Re AIA Industries, Inc. Securities Litigation*, Master File No. 84–2276 (E.D.Pa.) (Westlaw, 1988 WL 33883). The suits were ultimately settled.

Approximately two years after filing the original complaints in the class actions, a class of shareholders of common stock of AIA Industries, Inc., (whom we will refer to collectively as "Gruber"), brought this action against Price Waterhouse ("PW") for its role in the preparation of AIA's audited financial reports and a comfort letter in connection with the July 21, 1983 initial public offering of AIA stock. The complaint asserted claims pursuant to section 11 of the Securities Act of 1933, section 10(b) of the Securities Act of 1934 and rule 10b–5, and common law fraud and deceit. Gruber alleged that the financial statements prepared by Price Waterhouse were false in that they contained deficiencies in AIA's accounting procedures in regard to receivables from ITG, AIA's primary customer and from Roy Goldberg, ITG's sole shareholder and principal officer. Gruber contends that Price Waterhouse recklessly failed to discover or disclose the discrepancies as well as a variety of other fraudulent transactions that materially overstated the financial picture of AIA in the prospectus accompanying the public offering.

Relying upon a Stipulation of Facts, Price Waterhouse moved for summary judgment on all of Gruber's claims on the basis that each was time-barred by applicable statutes of limitations. The district court granted PW's motion for summary judgment on the section 11 claim, noting that the parties agreed that the controlling statute of limitations for the section 11 claim was one year from the time Gruber discovered or, after the exercise of reasonable diligence, should have discovered the untrue statements or omissions.[2] *Gruber v. Price Waterhouse*, 697 F.Supp. 859, 861 (E.D.Pa.1988). Hence, Gruber must have discovered or by reasonable diligence should have discovered the alleged fraud within one year of July 3, 1986, the filing date of the complaint.

For the common law claim under Pennsylvania law, the district court held that the appropriate time period was two years from the date Gruber knew or should have known of the injury and its cause.[3] Thus, since the complaint was filed on July 3, 1986, discovery of the facts supporting the common law claim must not have occurred prior to July 3, 1984. The district court also applied this two year state statute of

---

1. Price Waterhouse was not a defendant in these prior class action suits.

2. § 77m. Limitation of actions

   No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(2) of this title more than three years after the sale.

   15 U.S.C. § 77m (1981).

3. The following actions and proceedings must be commenced within two years:

   . . . .

   (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

   42 Pa.Cons.Stat.Ann. 5524(7) (Purdon 1989 Supp.).

limitations to the section 10(b) and the rule 10b–5 claims, concluding that our holding in *Data Access* of a one-year/three-year federal statute of limitations should be applied prospectively to the case of a non-seller accountant. Upon finding that a genuine issue of material fact existed as to whether Gruber was on inquiry notice of PW's alleged wrongdoing more than two years prior to July 3, 1986, the district court denied PW's motion for summary judgment on both the common law and section 10(b) and rule 10b–5 claims.

Arguing for a retroactive application of the statutes of limitations for the section 10(b) and the rule 10b–5 claims, Price Waterhouse moved to have this interlocutory order certified for immediate appeal under 28 U.S.C. § 1292(b). Pursuant to this request, the district court certified the following question for appeal:

> Should the limitations period established by the Third Circuit in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.1988), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), for claims filed under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), be applied retroactively?

Utilizing our discretion granted in 28 U.S.C. § 1292(b), we permitted an appeal to be taken from the interlocutory order and accepted the question certified by the district court.

## II.

■ We exercise *de novo* review of the district court's decision denying PW's motion for summary judgment on its section 10(b), rule 10b–5 and common law claims and granting summary judgment on the section 11 claim; we utilize the same test as the district court. *Waldorf v. Shuta*, 896 F.2d 723, 728 (3d Cir.1990), *citing Hynson By and Through Hynson v. City of Chester Legal Dept.*, 864 F.2d 1026, 1028–29 (3d Cir.1988). The test for deciding a summary judgment motion requires that

> [i]nferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most

favorable to the party opposing the motion. The nonmovant's allegations must be taken as true, and when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), *quoted in Laborers' International Union v. Foster Wheeler Corp.*, 868 F.2d 573, 575 (3d Cir.1989) (per curiam). When the statute of limitations is raised as a defense, we have recognized that it "is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant." *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir.1985), *quoted in Bradford–White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir.1989). The factual nature of this inquiry requires this burden to be heavy. *Van Buskirk*, 760 F.2d at 498.

■ Our scope of review is generally governed by the controlling questions of law set forth in the district court's certification order under 28 U.S.C. § 1292. Nevertheless, since we review orders and not isolated legal questions, *Juzwin v. Asbestos Corp., Ltd.*, 900 F.2d 686, 691 (3d Cir.1990) (citing *Miller v. Bolger*, 802 F.2d 660, 666 (3d Cir.1986)) we may consider all grounds that might require reversal of the order. *Data Access*, 843 F.2d at 1539.

## III.

In *Data Access*, we considered the limitations period applicable to a securities fraud action where the defendants, a law firm and an accounting firm, were non-sellers. As we noted in *Data Access*, "the Supreme Court has yet to rule on the applicable limitations period for a section 10(b) and rule 10b–5 action." *Data Access*, 843 F.2d at 1539. We examined existing Third Circuit precedent and concluded that it was based on the Supreme Court's "normal rule of looking to state statutes" as opposed to adopting a universal federal statute of limitations. *Id.* at 1540 (quoting *Roberts v.*

*Magnetic Metals Co.,* 611 F.2d 450, 454 (3d Cir.1979) (Seitz, J., dissenting)).

■ We concluded that three recent Supreme Court decisions dictated deviation from that rule and compelled the court to apply "the most analogous federal statute of limitations." *Data Access,* 843 F.2d at 1540 (citing *Agency Holding Corp. v. Malley–Duff Assocs., Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)). Bound by these Supreme Court pronouncements, we "decided that the proper period of limitations for a complaint charging violation of section 10(b) and rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *Id.* at 1550. The source from which this limitations period was borrowed was the Securities Exchange Act of 1934.[4] Because the application of our ruling was not requested in the question certified to us in *Data Access,* we did not decide whether the decision should be applied retroactively. We reserved this determination for the district court.[5] *Id.* at 1550–51.

## IV.

We have considered, on three separate occasions, whether *Data Access* should be applied retroactively or prospectively. *McCarter v. Mitcham,* 883 F.2d 196 (3d

Cir.1989); *Gatto v. Meridan Medical Associates, Inc.,* 882 F.2d 840 (3d Cir.1989); *Hill v. Equitable Trust Co.,* 851 F.2d 691 (3d Cir.1988). In each of those cases, we concluded that the *Data Access* limitation period should be given retroactive application.

In *Hill v. Equitable Trust Co.,* 851 F.2d 691 (3d Cir.1988), we explained the three qualifications necessary for applying a decision prospectively. This three-part test was enunciated by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), as follows:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil Co. v. Huson,* 404 U.S. at 106–07, 92 S.Ct. at 355–56 (citations omitted).

---

**4.** Counsel for Gruber correctly pointed out at oral argument that the district court wrongly stated the *Data Access* rule by indicating that "the limitations period found in the *Securities Act of 1933,* which applies to Section 11, also governs the implied causes of action under Section 10(b) and Rule 10b–5." *Gruber v. Price Waterhouse,* 697 F.Supp. 859, 861 (E.D.Pa.1988) (emphasis added). *Data Access* actually relied upon the Securities Exchange Act of 1934 which does not provide for inquiry notice. (Rather than "or after discovery should have been made by the exercise of reasonable diligence," the *Data Access* language provides "and in no event more than three years after such violation." *Data Access,* 843 F.2d at 1550). Although this may be error by the district court, it was harmless error since the court found that *Data Access* was to be applied prospectively here. Hence, it

is irrelevant that the statute of limitations for section 10(b) and Rule 10b–5 found in *Data Access* was misstated. The district court's determination of inquiry notice was necessary, however, in that section 11 is controlled by the statute of limitations from the Securities Act of 1933 which requires that such a determination be made.

**5.** Three dissenting judges believed that the *Data Access* court committed "egregious error" in not addressing the plaintiff's prospective-application argument. The dissenters argued that the new decision met the criteria for prospective application under the Supreme Court decision of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *Data Access* 843 F.2d at 1551.

Although we have recently indicated "that modern jurisprudence recognizes no set principle of retroactivity," *Juzwin*, 900 F.2d at 692 (*see also* accompanying footnote 8), we note a "continuing presumption in favor of retroactivity" (*id.* at 693) in our caselaw, specifically in those circumstances where Congress has been silent. *See also Kaiser Aluminum & Chemical Corp. v. Bonjorno*, — U.S. ——, 110 S.Ct. 1570, 1579–88, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring). Thus, despite the fact that we have applied *Data Access* retroactively in *Hill, Gatto,* and *McCarter*, the determination of retroactivity *vel non* involves a balancing which must be done on a case by case basis. *Juzwin*, 900 F.2d at 692 (quoting *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)). The burden of persuasion rests upon the party attempting to avoid retroactive application. *Id.* at 693 (*citing Ackinclose v. Palm Beach County, Fla.*, 845 F.2d 931, 933 (11th Cir.1988)). Here the district court found that the three factors of *Chevron* were met and therefore refused to apply the shorter one year/three year statute of limitations to the section 10(b) and rule 10b–5 claims. Instead, applying the two year common law statute of limitations, the district court denied PW's motion for summary judgment on the federal securities claims. Thus, we must now address the three factors of *Chevron* in turn to determine whether *Data Access* should be given retroactive application here.

## A.

Addressing the first *Chevron* factor, whether the decision established a new principle of law, we must examine the law as it existed at the time Gruber's cause of action arose and any changes which may have occurred prior to the time the complaint was filed. We must determine whether our decision in *Data Access* over-

ruled past precedent upon which Gruber may have relied in deciding when to bring suit against Price Waterhouse.

We have previously stated that "[p]rior precedent ... must be 'sufficiently clear that a plaintiff could have reasonably relied upon it in delaying suit, a criteri[on] that was not met where the law was erratic and inconsistent.'" *Hill*, 851 F.2d at 696 (*quoting Fitzgerald v. Larson*, 769 F.2d 160, 163 (3d Cir.1985). Therefore, we must determine if Gruber had "sufficiently clear" precedent to have relied upon the common law statute of limitations for the section 10(b) and rule 10b–5 claims. The basic inquiry we must address here is what a claimant, or his reasonably prudent attorney, would do in 1984 in light of the law at the time the violation occurred.

Because this retroactive analysis is fact sensitive, the ruling in *Hill* that *Data Access* did not overrule clear past precedent which was sufficient to warrant justifiable reliance, is not controlling here.[6] Additionally, in *Gatto* we explained that although *Hill* had upheld retroactive application of *Data Access*, "it does not follow that this is necessarily the result in all cases." *Gatto*, 882 F.2d at 843. Similarly, in *McCarter* we recognized that, regardless of *Hill*, the court "must decide more particularly whether the facts of [the case at issue] have been clearly decided in prior cases." *McCarter*, 883 F.2d at 203.

The relevant authority available to Gruber and upon which he could have relied is contained within *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979), *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir.1980), and *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir. 1981). In *Roberts* and *Biggans*, we held that the statute of limitations period in securities fraud cases was determined by looking to the state statute of limitations that "best comported with the federal policies underlying rule 10b–5." *In re Data*

---

**6.** Pertinent to our discussion is the fact that both *Gatto* and *McCarter* were decided after Gruber filed his complaint against Price Waterhouse as well as after the district court entered judgment in this case. Thus, not only was Gruber unable to rely upon these cases, but they

also do not impinge upon our retroactivity inquiry. We note as well that since the facts of *Gatto* and *McCarter* are different from Gruber's situation, our court's discussion concerning the status of the law at that time in those cases would not have application here.

*Access Sys. Sec. Litig.,* 843 F.2d 1537 (3d Cir.1988) (Seitz, J., dissenting). The limitations period was either the state Blue Sky limitations period or the common law fraud period, depending on whether the plaintiff "color matched" the asserted claim to a claim cognizable under the state Blue Sky law. Notwithstanding the fact that the "color match" method was reversed by *Malley–Duff & Associates v. Crown Life Insurance Co.,* 792 F.2d 341 (3d Cir.1986), *aff'd sub nom. Agency Holding Corp. v. Malley–Duff & Associates,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), we must employ such an analysis to make a determination of retroactivity under the first factor of *Chevron* where the facts at bar must be "color matched" with the appropriate precedent.

In both *Roberts* and *Biggans* the panel members were divided on the issue of the appropriate limitations period. In *Roberts,* each member of the panel wrote a separate opinion, with two members applying the state general fraud statute, and the dissenter arguing application of the state Blue Sky limitation.[7] In *Biggans,* the two judges who had formed the majority in *Roberts* again opted for the state general fraud statute, while the dissent argued application of the state Blue Sky limitation.[8] More recently, we summarized the situation as follows:

> [B]y the end of 1980, four judges from this court had considered the issue; two would have applied the state general fraud laws and two would have used the Blue Sky statutes. Consequently, the law in the circuit on this point could fairly be described as uncertain.

*Hill,* 851 F.2d at 697. Nonetheless, we recognized that "[a]lthough the majority opinions in *Biggans* and *Roberts* were precedential, the factual situations in each case left considerable room for variations...." *Id.* Relevant to *our* factual situation here is an opinion subsequent to *Biggans* and *Roberts* which clarified the applicable statute of limitations on which purchasers of securities bringing suit against accountants could rely.

In 1981, we decided *Sharp v. Coopers & Lybrand.* In *Sharp,* the purchaser of a limited partnership interest sued an accounting firm which had prepared an opinion letter dealing with the tax treatment of investors. The purchaser alleged material misrepresentations and omissions by the accounting firm. We concluded that the case was not distinguishable from *Biggans,* since the defendant was not a seller, and under Pennsylvania law a state securities action would not lie. We then applied the statute of limitations for common law fraud.[9]

While in *Hill, Gatto* and *McCarter* we found that the factual scenarios were not sufficiently analogous to *Biggans, Roberts,* and *Sharp* for the plaintiffs to have relied upon them for precedential value, such is not the case here. *Sharp* clarified the precedent for Gruber when we specifically held that in Pennsylvania the common law statute of limitations should be employed where the purchaser of a security brings section 10(b) and rule 10b–5 claims against an accounting firm. *Sharp,* 649 F.2d at 191–92.

Price Waterhouse argues, however, that our *Sharp* decision only summarily followed precedent and was undercut by a Pennsylvania Superior Court decision that an action could lie against an attorney un-

---

7. In *Roberts,* the selling shareholder sued a corporation, its merger partner, and their broker agent, arguing that the defendants had made material misrepresentations. Under the New Jersey Blue Sky law there was no cause of action for sellers and the court found the common law fraud limitations period most analogous to the plaintiff's claim.

8. In *Biggans,* the plaintiff brought an action for churning against a non-seller defendant brokerage firm. Under the Pennsylvania Blue Sky law, there was no cause of action against a non-seller who was not in privity with the plaintiffs, and the court found the common law fraud limitations period applicable.

9. In *Sharp,* a six year statute of limitations was utilized since that was the period in effect for common law fraud actions prior to 1982. *See* 42 Pa.Cons.Stat.Ann. § 5527 (Purdon 1981). Subsequent to 1982, Pennsylvania implemented a two year statute of limitations which applies to the case at bar. *See* 42 Pa.Cons.Stat.Ann. § 5524 (Purdon Supp.1989).

der the Pennsylvania Blue Sky laws. In *Brennan v. Reed, Smith, Shaw & McClay*, 304 Pa.Super. 399, 450 A.2d 740 (1982), the Pennsylvania Superior Court suggested that a non-seller attorney, acting as an aider and abettor, may be subject to a cause of action under section 503 of the Pennsylvania Blue Sky law, as opposed to *Biggans* where our court relied on section 501. We find *Brennan* inapplicable because section 503 affects joint and several liability, contribution and a corporation's right to indemnification—doctrines not at issue here. Further, the relevant language was contained in dicta that had no binding authority.

Price Waterhouse also argues that the district court should be bound by the determination in *Gatto* that there was not sufficiently clear past precedent, since *Gatto* also involved a claim against an accountant. This argument challenges the district court's finding that *Sharp* was clear precedent for "claims by a purchaser of a security against an accountant." *Gruber*, 697 F.Supp. at 862. We note that *Gatto* never mentioned *Sharp* and find an explanation in the fact that the facts of *Sharp* were simply not analogous to those of *Gatto*. Although PW focuses on the capacity of the parties, we are persuaded that the relevant inquiry for the district court is "whether the facts of [the case at issue] have been clearly decided in prior cases." *McCarter*, 883 F.2d at 203.

*Sharp* involved a 10b–5 action against a non-selling accounting firm which had given a false opinion, similar to the factual scenario here. Conversely, in *Gatto*, the plaintiffs, suing under § 29(b) of the 1934 Act, attempted to rely upon the New York six year statute of limitations for recision of contracts. After the plaintiffs were unable to cite any precedent, and we were unable to find any on point (882 F.2d at 843), we applied the two year New Jersey Blue Sky statute of limitations and found their action to be barred. Further, although *Gatto* involved a claim by purchasers of securities against an accounting firm, crucial to our decision there was the lack of justifiable reliance by the purchasers pursuant to the first *Chevron* factor.

Because the purchasers in *Gatto* "did not know the significant operative facts underlying their cause of action, particularly that the IRS would disallow the deductions [for their securities investments], until after the three year absolute bar period of *Data Access* had passed, they could not possibly have relied on a longer statute of limitations period. Thus the first of the *Chevron* criteria [was] not met [t]here." *Id.* Hence, justifiable reliance was impossible in *Gatto*. Because this fact pattern is unique to *Gatto*, *Sharp* was not analogous, therefore, *Gatto* is not controlling precedent here on the first *Chevron* factor.

Finally, Price Waterhouse argues that the Supreme Court decisions in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and *Agency Holding Corp. v. Malley–Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), provide sufficient doubt as to the clarity of available precedent during the time span relevant to the factual inquiry here. However, as noted by the dissenting judges in *Data Access*, none of those Supreme Court cases "even considered, much less clearly overruled, Third Circuit precedent dealing with securities fraud." *Data Access*, 843 F.2d at 1553 (Seitz, J., dissenting). Unquestionably *Sharp* provides the precedential authority which appeared conclusive for the relevant factual situation, upon which Gruber and his attorney could reasonably rely in 1984 in order to preclude retroactive application of *Data Access* under the first factor of *Chevron*. In accordance with this analysis, we therefore concur with the district court's conclusion that the first factor of *Chevron*, as utilized here, favors prospective application of *Data Access*.

B.

The second component of the *Chevron* analysis requires a weighing of the "merits and demerits of each case" to determine the scope of the rule and to ascertain whether the retroactive operation would further or retard the rule. The district

court summarily noted that the second *Chevron* factor is neutral with regard to the *Data Access* rule relying upon *Hill* as well as recognizing the absence of any challenge to this conclusion by either party. *See* 697 F.Supp. at 862 n. 4. In fact, in every instance in which we utilized the *Chevron* test where a party has sought to have *Data Access* applied retroactively, we have invariably resolved the second factor in a similar fashion. *See McCarter*, 883 F.2d at 204; *Gatto*, 882 F.2d at 843; *Hill*, 851 F.2d at 698.

We have described the rule of *Data Access* as having the purpose of furthering certainty and uniformity for statutes of limitation for section 10(b) and rule 10b–5 claims. *E.g.*, *McCarter*, 883 F.2d at 204. By allowing as few exceptions as possible to the rule of retroactivity, greater uniformity and certainty result, thus the second criterion appears to favor retroactivity. Nevertheless, in the instance of *Data Access*, "this reasoning swallows the rule." Components one and three mandate prospective application in cases where a new period of limitations replaces a well-settled statute since it would be inequitable to change the rules in midstream when clear precedent had been relied upon. Thus, we are compelled to conclude that the second factor "does not 'militate clearly either in favor of or against retroactive application' and is therefore neutral." *McCarter*, 883 F.2d at 204 *quoting Al–Khazraji v. Saint Francis College*, 784 F.2d 505, 513 (3d Cir. 1986), *aff'd*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1986).

### C.

The third and final criterion of *Chevron* requires us to discern the risk of substantial inequity which would ensue if retroactive application were given to *Data Access* in this case. The district court concluded that retroactivity would be clearly inequitable to Gruber. 697 F.Supp. at 863. As we noted in *Gatto*, "the third *Chevron*

factor in practice overlaps with that of the first factor, 'in that it would be inequitable to give retrospective application to a shortening of the limitations period that altered established law upon which plaintiff could have reasonably relied.'" 882 F.2d at 844, *quoting Fitzgerald v. Larson*, 769 F.2d at 164. Hence, a conclusion favoring prospective operation under the first factor appears to strongly advise a similar conclusion for the third factor.[10] An absence of clear precedent in *Gatto* thereby distinguishes it from the case at bar.

Our decisions in *Hill* and *McCarter* also may be distinguished from the facts here since, not only did we decide that there was no clear precedent relied upon by the plaintiffs under the first component of *Chevron*, but we found that regardless of whether or not *Data Access* was applied, the limitation periods would have been identical. *Hill*, 851 F.2d at 698; *McCarter*, 883 F.2d at 205. Conversely, retroactive application of *Data Access* would bar Gruber's claims when they would not otherwise be barred by the two-year limitations period under Pennsylvania law, 42 Pa.Con.Stat.Ann. § 5524(7) (Purdon Supp.1989). Indeed the district court recognized that "[i]t would be inequitable to conclude that plaintiffs 'slept on their rights' and thus are deprived of their day in court when, during the relevant time period, they could reasonably rely on a two-year period...." *Gruber*, 697 F.Supp. at 863. We, therefore, conclude that the third criterion of *Chevron* favors prospective operation of *Data Access* here.

■ Because the statute of limitations established by *Data Access* will not be applied to the section 10(b) and rule 10b–5 claims, the most analogous state statute of limitations must be used. We agree with the district court's adoption of the two year common law limitations period used for the fraud and deceit claims for this purpose and the denial of summary judgment as to

---

**10.** Counsel for Price Waterhouse indicated at oral argument that the first factor of *Chevron* was clearly the most important since a finding of no clear precedent is necessary to undercut Gruber's argument of justifiable reliance. This would also necessarily affect the third factor whereby any possible inequities arising from the retrospective operation of *Data Access* would be virtually eliminated.

the section 10(b) and rule 10b–5 claims because of the presence of genuine issues of material fact in relation to the expiration of the limitations period.

V.

While the parties do not challenge the utilization of the one year statute of limitations for the section 11 nor the two year limitations period for the common law claims, Gruber disputes the district court's determination that inquiry notice was present prior to July 3, 1985. The following facts were drawn from the Stipulation of Facts entered by the parties and upon which Price Waterhouse based its motion for summary judgment.

Beginning in September, 1984 the following reports of fraud by AIA management were reported: after reporting knowledge of fraud by AIA management to the bankruptcy trustee, outside counsel for AIA withdrew from representation; the trustee was also informed that the FBI had found several of AIA's financial and accounting records in a city dump; the trustee was served with a state grand jury subpoena after a state investigation into AIA was instituted; a federal investigation was similarly initiated; and investigators linked Roy Goldberg (ITG's sole shareholder and principal officer) to organized crime. In June, 1985, a former financial officer of AIA and an accountant both testified to occurrences of fraud by AIA in connection with financial reporting. Also, in early 1985, plaintiffs began to receive documents from Price Waterhouse, including a "Management Letter" specifying deficiencies in AIA's accounting procedures. Based on these events, the district court concluded that the plaintiffs were at least on inquiry notice of the alleged wrongdoing before July 3, 1985, one year before the section 11 cause of action was filed. However, the district court concluded that a genuine issue of material fact existed in regard to whether Gruber's common law claims had accrued before July 3, 1984, two years before the action was filed. 697 F.Supp. at 865–66.

The court examined all of the stipulated facts and systematically analyzed and recorded the repeated "storm warnings" about the alleged fraud of which Gruber was aware. Applying the summary judgment test from *Goodman v. Mead Johnson & Co.*, 534 F.2d at 573, we find that no assertions by Gruber have been advanced which raise a genuine issue of material fact relevant to the preclusion of the section 11 claim by reason of the applicable statute of limitations. The district court's holdings, as a matter of law, that a trier of fact could draw only the conclusions that Gruber was on notice more than one year prior to the filing date for purposes of the section 11 claim, and that Gruber was not on notice more than two years prior to the filing date in regard to the common law claim, are warranted by the facts. We will affirm the district court's grant of summary judgment on the section 11 claim and its denial of the motion for summary judgment on the common law and section 10(b) and rule 10b–5 claims.

VI.

In summary, our answer to the certified question is in the negative. We, therefore, find that the district court did not err in applying *Data Access* prospectively. For the reasons discussed in this opinion, the district court's order dismissing Gruber's section 11 claim by the grant of summary judgment and its denial of the balance of the motion for summary judgment on the common law fraud and deceit claims and the section 10(b) and rule 10b–5 claims will be affirmed.