**Morton LEVINE, suing individually and on behalf of all other shareholders of NL Industries, Inc. similarly situated, Plaintiff–Appellant,**

v.

**NL INDUSTRIES, INC., Defendant–Appellee.**

**No. 717, Docket 89–7949.**

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1990.

Decided Feb. 15, 1991.

Rachell Sirota, New York City (Howard B. Sirota, Rabin & Sirota, New York City, of counsel), for plaintiff-appellant.

Stewart D. Aaron, New York City (Richard L. Bond, Stephen B. Camhi, Robert G. Manson, Dorsey & Whitney, New York City, of counsel), for defendant-appellee.

Before LUMBARD, FEINBERG and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This is a class action brought pursuant to section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b)(1988), and Securities and Exchange Commission rule 10b–5, 17 C.F.R. § 240.10b–5 (1990), promulgated thereunder. Appellant Morton Levine claims that defendant NL Industries, Inc. ("NL") should have disclosed that its wholly-owned subsidiary, NLO, Inc. ("NLO"), was operating a uranium processing center at Fernald, Ohio (the "Fernald facility") in violation of state and federal environmental laws, and that as a result NL was subjecting itself to significant liability. Levine also claims that NL issued a number of material misrepresentations concerning the performance of its petroleum services business.

The United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, Judge, granted summary judgment dismissing the environmental claim in an opinion issued July 31, 1989, *Levine v. NL Indus.*, 717 F.Supp. 252 (S.D. N.Y.1989), and granted summary judgment dismissing the petroleum services claim in an opinion issued August 28, 1989, *Levine v. NL Indus.*, 720 F.Supp. 305 (S.D.N.Y. 1989). Judgment was then entered dismissing the complaint, from which this appeal was taken.

We affirm the judgment of the district court.

## Background

NLO operated the Fernald facility, which was owned by the Department of Energy ("DOE"), from 1951 through 1985 pursuant to a contract between DOE and NLO under which DOE agreed to indemnify NLO for various categories of losses and expenses, including litigation expenses. On December 10, 1984, it was publicly disclosed that uranium dust had been emitted accidentally at the Fernald facility. On January 23, 1985, a class action was brought against NL and NLO by landowners and residents within a five-mile radius of the Fernald facility. *In re Fernald Litigation*, C–1–85–0149 (S.D.Ohio). On March 11, 1986, the State of Ohio brought a separate action against DOE, NLO and NL seeking clean-up and response costs, residual damages, and civil penalties for alleged violations of various environmental statutes and regulations. *See Ohio v. United States Dep't of Energy*, 689 F.Supp. 760 (S.D.Ohio 1988) (denying motion to dismiss based upon sov-

ereign immunity), *aff'd*, 904 F.2d 1058 (6th Cir.1990).

Morton Levine commenced this action on May 13, 1986 on behalf of all persons who purchased the common stock of NL between January 27, 1982 and December 10, 1984 (the "class period"). His first claim is that NL should have disclosed that NLO was operating the Fernald facility in violation of state and federal environmental laws, thereby subjecting NL to significant liability.

Petroleum services is one of NL's principal lines of business. Petroleum services companies as a group were highly profitable through 1981, but generally experienced difficulty during the class period. Levine's second claim in this action is that NL made various public statements attributing the downturn in its petroleum services business to temporary factors, thus "minimizing its problems and predicting future favorable results when it internally knew that NL was experiencing deterioration in its business which it internally projected would continue in the future." The last of these allegedly misleading statements occurred in 1984.

Purchasers of NL's common stock during the class period are alleged to have paid inflated prices therefor as a result of the asserted nondisclosures and misrepresentations.

## Discussion

Although the briefing and argument of this appeal was directed primarily to the merits, NL's brief on appeal included a contention that we should affirm the judgment of the district court because Levine's claims are barred by the applicable statute of limitations. NL urged that this court follow the Third Circuit's ruling in *In re Data Access Sys. Sec. Litig.*, 843 F.2d 1537 (3d Cir.) (in banc), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), which held that "the proper period of limitations for a complaint charging violation of section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such viola-

tion." *Id.* at 1550. We subsequently adopted the *Data Access* rule in *Ceres Partners v. GEL Assocs.*, 918 F.2d 349 (2d Cir.1990). Accordingly, we will first consider the limitations issue, and thereafter the merits.

### A. *Statute of Limitations.*

■ We note at the outset several references by the district court to a motion by NL to amend its answer to assert a statute of limitations defense. *See Levine*, 717 F.Supp. at 252; *Levine*, 720 F.Supp. at 305, 312 n. 1. We do not understand these references. NL's answer clearly states the limitations defense, and the docket sheet does not indicate any motion to amend the answer. Had NL failed to plead the limitations defense in its answer, it would ordinarily be regarded as waived. *See* Fed.R. Civ.P. 12(b); 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1347, at 184 (2d ed.1990). Since, however, this does not appear to us to have been the case, we proceed to consider NL's limitations defense.

In *Ceres*, this circuit adopted a uniform federal limitations period for the implied rights of action derived from sections 10(b) and 14(d) and (e) of the Exchange Act and rule 10b–5, disavowing our prior practice of borrowing state limitations periods. *Ceres*, 918 F.2d at 360–64. The limitations rule now applied in this circuit is the one year/three year standard of *Data Access* that is also provided in the Exchange Act by sections 9(e) and 18(c), 15 U.S.C. §§ 78i(e) and 78r(c) (1988), for express rights of action under sections 9(e) and 18(a), *id.* §§ 78i(e) and 78r(a). *Ceres*, 918 F.2d at 362–64.

Levine commenced this action on May 13, 1986. The alleged omissions in connection with the Fernald facility were made public on December 10, 1984, when the uranium release was disclosed, or at the very latest January 23, 1985, when *In re Fernald Litigation* was publicly announced. As to Levine's petroleum services-related claim, the last alleged misrepresentation by NL was made in 1984 and the class period ended on December 10, 1984. Since these dates are

more than one year prior to the time when Levine commenced this action, and the events upon which Levine premises this litigation were conspicuously public in nature, the one-year statute of limitations adopted in *Ceres* would, if applicable, probably bar both of Levine's claims. We conclude, however, that this action is not governed by the limitations rule adopted in *Ceres.*

As the outcome in *Ceres* was the same as it would have been through application of state limitations periods in accordance with our prior precedents, *Ceres* left "for the future all questions concerning retroactive application" of its one-year/three-year statute of limitations. 918 F.2d at 364. We have since addressed those questions in *Welch v. Cadre Capital,* 923 F.2d 989, 992–95 (2d Cir.1991), a case in which section 10(b) and rule 10b–5 claims had been dismissed by the district court on *Ceres* limitations grounds.

We reversed. After a careful analysis of the retroactivity issue in terms of the governing three-part test set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), *Welch* held that *Ceres* should not be applied retroactively, thus allowing claims to proceed that were brought within the time allowed by pre-*Ceres* precedents, although not allowed by the rule stated in *Ceres.*[1] *See also Finkel v. The Stratton Corp.,* 754 F.Supp. 318, 331, 332 (S.D.N.Y.1990) (*Ceres* not applied retroactively).

As in *Welch,* we decline to give *Ceres* retroactive application here. NL makes no claim that, in the absence of application of the *Data Access/Ceres* rule, Levine's claim is barred by any applicable statute of limitations. We therefore proceed to the merits.

**B. *The Merits.***

We first address Levine's claim that NL fraudulently failed to disclose that NLO was operating the Fernald facility in violation of pertinent environmental law. In order for an omission to be actionable, the omitted information must have been material, *Basic Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988), and there must have been a duty to disclose it, *id.* at 239 n. 17, 108 S.Ct. at 987 n. 17.

■ The district court granted NL summary judgment on this claim because it found that NL had no duty to disclose that NLO was operating the Fernald facility in violation of applicable environmental law. *Levine,* 717 F.Supp. at 257. Levine, on the other hand, contends that NL had a duty to disclose because disclosure was necessary to make several statements in NL's annual reports and form 10–K filings not misleading, and because such a duty was imposed by 17 C.F.R. §§ 229.101(c)(1)(xii) and 229.-103 (1990). With one exception discussed below, we do not examine whether NL had a duty to disclose, because we conclude that Levine's allegations did not satisfy the requirement of materiality.

The Supreme Court has ruled in the context of proxy solicitations that "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). The Court then adopted that standard in the section 10(b)/rule 10b–5 context, and reiterated "that to fulfill the materiality requirement 'there must be a substantial likelihood that

---

**1.** The Third Circuit declined to apply its *Data Access* ruling retroactively in *Gruber v. Price Waterhouse,* 911 F.2d 960 (3d Cir.1990), but did give *Data Access* retroactive effect in *McCarter v. Mitcham,* 883 F.2d 196 (3d Cir.1989); *Gatto v. Meridan Medical Assoc.,* 882 F.2d 840 (3d Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990); and *Hill v. Equitable Trust Co.,* 851 F.2d 691 (3d Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). These rulings do not imply any

conflict within the Third Circuit, or for that matter between the Third and Second Circuits. Rather, as *Gruber* makes clear, "the determination of retroactivity *vel non* involves a balancing which must be done on a case by case basis." *Gruber,* 911 F.2d at 965 (citing *Juzwin v. Asbestos Corp.,* 900 F.2d 686, 692 (3d Cir.1990) (quoting *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355), *cert. denied,* — U.S. ——, 111 S.Ct. 246, 112 L.Ed.2d 204 (1990)).

the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *Basic*, 485 U.S. at 231–32, 108 S.Ct. at 983 (quoting *TSC Industries*, 426 U.S. at 449, 96 S.Ct. at 2132).

NL's alleged failure to disclose environmental law violations was immaterial because DOE had agreed to indemnify NL and NLO in the event of liability or loss arising out of any such violations. Under these circumstances, as the district court recognized, see *Levine*, 717 F.Supp. at 255, there was no plausible way that NL's shareholders could suffer financially from the consequences of the alleged environmental violations. Accordingly, a reasonable investor would not consider NL's asserted violations of environmental law important information significantly altering the total mix of information made available to the investor.

Levine argues that NL was not in fact indemnified, pointing to various provisions of the contract between DOE and NLO in support of that position. DOE, however, has consistently taken the position that it is obliged to indemnify NLO for any damages that it may incur as a result of the alleged environmental violations at issue in this case. For example, a DOE contracting officer, after a lengthy investigation of the matter, issued the following "determination":

> The determination to be made in this decision is whether any evidence whatsoever exists supporting the conclusion that NLO's directors, officers, or supervising representative engaged in wilful misconduct or acted in bad faith in [the Fernald] operation in a manner that resulted in the known releases of uranium or in the manner in which they approached environmental matters.
>
> Based upon the results of my investigation, I conclude that no such evidence exists. During the course of its administration of the [Fernald facility], NLO did nothing that was not fully in accord with DOE's policy and directives. Any costs, judgments, fines or penalties assessed

against NLO in either *In re Fernald Litigation*, or the *Ohio* suit are reimburseable by DOE.

Similarly, counsel for DOE in the litigation brought by landowners and residents adjoining the Fernald facility represented to the court that DOE would indemnify NL and NLO for any damages incurred in that litigation, including punitive damages. Accordingly, even if some conceivable course of conduct by NLO might have led to liability for environmental violations that DOE would not have indemnified, there is no indication that such a situation ever materialized so as to require its disclosure.

■ Despite our conclusion that, on the facts presented in this case, no rule 10b–5 violation occurred with respect to environmental disclosure, we deem it appropriate to address briefly the interpretation of 17 C.F.R. § 229.101(c)(1)(xii) (1990), which provides:

> Appropriate disclosure ... shall be made as to the material effects that compliance with Federal, State and local provisions which have been enacted or adopted regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries. The registrant shall disclose any material estimated capital expenditures for environmental control facilities for the remainder of its current fiscal year and its succeeding fiscal year and for such further periods as the registrant may deem materials [sic].

The district court's opinion might be read as interpreting this section to require disclosure only of the cost of complying with environmental regulations, but not the cost of failing to comply with them. *See Levine*, 717 F.Supp. at 254–55. Such an interpretation would be incorrect. Disclosure of potential costs for violations of environmental laws, if material, is ordinarily required. The SEC has stated, in the context of filings pursuant to section 13 of the Exchange Act (requiring periodical and other reports by specified corporations), that:

> if a corporation has a policy or approach toward compliance with environmental

regulations which is reasonably likely to result in substantial fines, penalties, or other significant effects on the corporation, it may be necessary for the registrant to disclose the likelihood and magnitude of such fines, penalties and other material effects in order to prevent from being misleading required disclosures with respect to such matters as descriptions or disclosures relating to description of the corporation's business, financial statements, capital expenditures for environmental compliance or legal proceedings.

*In re United States Steel Corp.*, Exchange Act Release No. 16,223, [1979–1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 82,319, at 82,384 (Sept. 27, 1979).

To reiterate, we hold that, although the cost of failing to comply with environmental regulations must be disclosed, there is no duty of disclosure in this case because of the indemnification provided by the contract between NLO and DOE.

Finally, as to Levine's claims concerning NL's disclosures regarding its petroleum services business, we affirm for the reasons stated by the district court in its opinion addressing that issue. *See Levine*, 720 F.Supp. at 307–11.

## Conclusion

The judgment of the district court is affirmed.