In re Frank E. JABLONSKI and Sandra L. Jablonski, Debtors.

Frank E. JABLONSKI and Sandra L. Jablonski, Plaintiffs,

v.

HOUSING MORTGAGE CORPORATION, Defendant.

Bankruptcy No. 91–1332–BM. Adv. No. 91–0302–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

April 16, 1992.

Daniel J. Gates, Pittsburgh, Pa., for plaintiffs, debtors.

Louis P. Vitti, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the court is a *Complaint To Determine Secured Status and To Avoid Mortgage* brought by Frank E. and Sandra L. Jablonski ("hereinafter debtors"). Debtors opine that the present fair market value of their residence is less than the amount due and owing on the mortgage on the property which is held by defendant Housing Mortgage Corporation (hereinafter "Housing"). They seek a determination pursuant to 11 U.S.C. § 506(a) that the claim of Housing is secured only to the extent of the alleged fair market value of the property—i.e., $17,500. They also seek, pursuant to 11 U.S.C. § 506(d), to void (or "strip down") that portion of Housing's claim which exceeds the alleged value of the property.

This adversary proceeding is based upon the holding in *Gaglia v. First Federal Savings & Loan Association*, 889 F.2d 1304 (3d Cir.1989). Debtors maintain that §§ 506(a) and 506(d) are complementary and must be read together. They argue that § 506(d) bifurcates claims allowed under 11 U.S.C. § 502 into secured and unsecured claims. According to debtors, any portion of an allowed claim which is deemed to be unsecured under § 506(a) is not an "allowed secured claim" within the lien-voiding scope of § 506(d).

Housing opposes the relief requested by debtors. It argues that *Gaglia* in effect has been overruled by *Dewsnup v. Timm*, — U.S. —, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and that *Dewsnup* should be retroactively applied to this case.

Judgment will be entered for Housing and against debtors for reasons set forth below.

I

## FACTS

Debtors own their family residence located at 336 Valley Street, McDonald, Pennsylvania.

At the time of this filing the residence was subject to three (3) mortgages. The first mortgage was granted to defendant Housing on July 21, 1978. The second and third mortgages were held by Equibank and Commercial Credit, respectively.

On April 22, 1991, debtors filed a voluntary chapter 7 petition. A chapter 7 trustee was appointed shortly thereafter. Debtors listed the residence as an asset on their bankruptcy schedules and claimed that it had a value of $35,000. They did not claim an exemption in the residence.

The amount due and owing to Housing as of April 22, 1991 was $31,870.92. Debtors have not objected to the proof of claim in that amount which was filed by Housing.

The complaint in the above-captioned adversary proceeding was filed on May 17, 1991. Housing, Equibank, and Commercial Credit were named defendants. Debtors alleged that the property had a fair market value of only $17,500. They sought to bifurcate Housing's claim into a secured claim in the amount of $17,500 and to void or "strip down" the unsecured portion of the claim pursuant to 11 U.S.C. §§ 506(a) and (d). In addition, debtors sought a determination that the claims of Equibank and Commercial Credit were fully unsecured and asked that the liens securing their claims be voided in their entirety.

Only Housing answered the Complaint in a timely manner. No responsive pleadings were filed by Equibank or Commercial Credit. On June 27, 1991, a default order was entered which determined that the claims of Equibank and Commercial Credit

were fully unsecured and voided them in their entirety.

The trustee reported on July 8, 1991, that there were no assets in the estate over and above the exemptions claimed by debtors.

Debtors were granted a discharge on September 8, 1991. A final decree was entered and the case was closed on September 18, 1991.

Trial on the above adversary action was held on April 6, 1992, at which time debtors and defendant were permitted to offer testimony and other evidence.

## II

## ANALYSIS

A.) *Retroactive Application of Dewsnup.*

■ As has been noted, debtors action is based upon *Gaglia,* which held that a debtor could utilize 11 U.S.C. § 506(d) to void that portion of a lien secured by real property which exceeds the value of the property.

*Gaglia* no longer is good law. On January 15, 1992, approximately two (2) years *after* the present adversary action had been commenced, the Supreme Court of the United States held in *Dewsnup* that § 506(d) of the Bankruptcy Code does *not* enable a chapter 7 debtor to "strip down" a mortgage on real property to the judicially determined value of said property when that value is less than the amount secured by the mortgage. The Supreme Court declined to read § 506(d) as creating a remedy against allowed claims to the extent that they are unsecured for purposes of § 506(a) of the Code. *Dewsnup* in effect has overruled *Gaglia.*

■ Housing maintains that *Dewsnup* should be applied retroactively to this case and that it therefore is entitled for that reason to judgment in its favor.

Debtors concede that Housing should prevail if *Dewsnup* applies to this case. However, they deny that *Dewsnup* has retroactive application and insist that they are entitled to judgment in their favor pursuant to *Gaglia.*

■ A retroactive judgment is one that applies to all cases without regard to when the cause of action arose or when the case was litigated. *See Cohn v. Searle & Co.,* 784 F.2d 460, 462 n. 5 (3d Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 248 (1986).[1]

■ Retroactivity is not appropriate in every case. Modern jurisprudence instead relies upon a balancing approach which recognizes that "statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct". *Juzwin v. Asbestos Corp., Ltd.,* 900 F.2d 686, 692 (3d Cir.) (*quoting Lemon v. Kurtzman,* 411 U.S. 192, 199, 93 S.Ct. 1463, 1468, 36 L.Ed.2d 151 (1973)).

The Supreme Court articulated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the following triparte test for determining whether a new rule of law should be applied retroactively:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation." Finally, we must have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity".

404 U.S. at 106–107, 92 S.Ct. at 355 (citations omitted).

■ There is a strong presumption in favor of retroactive application. As a con-

---

**1.** Debtors in effect are claiming that *Dewsnup* has only *prospective* application—i.e., that it ap-
plies only to future cases and not to any prior or pending case. *Cohn,* 784 F.2d at 462 n. 5.

sequence, a new rule of law should not be applied retroactively only when the weight of the *Chevron* factors on balance favors prospective application. *Juzwin,* 900 F.2d at 693. This determination must be made on a case-by-case basis. *Gruber v. Price Waterhouse,* 911 F.2d 960, 965 (3d Cir. 1990).

Due to this presumption, the burden of persuasion is upon the party seeking to avoid retroactive application. *Juzwin,* 900 F.2d at 693 (*citing Ackinclose v. Palm Beach County, Florida,* 845 F.2d 931, 933 (11th Cir.1988)).

Although debtors strenuously objected to retroactive application of *Dewsnup* to this case, they have come forward with nothing to meet their burden of showing that it should not be applied. Debtors have left it to the court to do their job for them.

The following analysis compellingly indicates that *Dewsnup* should be given retroactive application in this instance.

Turning to the first consideration identified in *Chevron,* we must determine whether *Dewsnup* overrules clear past precedent on which debtors may have relied or decided an issue of first impression whose resolution was not clearly foreshadowed. This in turn requires that the law as it existed at the time debtors' cause of action arose be examined as well as any changes which may have occurred prior to the commencement of the present action. *See Gruber,* 911 F.2d at 965. The basic inquiry in this regard is what action debtors or a reasonably prudent attorney could have taken at the time the cause of action arose. *Id.*

The most salient time period in this case is when debtors granted Housing the mortgage on their residence which they now seek to "strip down". What were the "hard facts" on which these individuals relied "in making the decision and shaping their conduct" on the date they determined to execute the mortgage? What was the state of the law at that time?

As has been noted, debtors granted Housing the mortgage on July 21, 1978. The Bankruptcy Code, including § 506(d), was not enacted into law until November 6, 1978, more than three (3) months *after* the

mortgage had been granted. We have no reason to believe that debtors were aware of this state of the law. However, the "hard fact" is that the former Bankruptcy Act was in effect at the time debtors executed the mortgage in question.

The relief which debtors seek was *not* available under the Bankruptcy Act. Apart from reorganization proceedings, no provision of the pre–Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt. *Dewsnup,* —— U.S. at ——, 112 S.Ct. at 779. There was no rule of law to the effect that debtors could "strip down" Housing's mortgage to the extent that the amount due and owing on said mortgage was greater than the value of the property securing the mortgage. To the contrary, the law which was in effect at the time the mortgage was granted unequivocally denied such relief to debtors in bankruptcy.

Those cases which *Dewsnup* in effect has overruled do *not* constitute "clear past precedent on which debtors may have relied".

The first reported case to hold that liens could be so "stripped down" appears to be *In re Tanner,* 14 B.R. 933 (Bankr.W.D.Pa. 1981). However, *Tanner* was not decided until more than three (3) years *after* the mortgage had been granted. Moreover, *Tanner* purported to interpret the Code, which was not in effect at the time the mortgage to Housing was granted.

Although *Gaglia,* upon which debtors rely, was the controlling law in this circuit when the present adversary action was commenced, it too is not a case upon which debtors could have relied when they granted the mortgage to Housing which they now seek to "strip down". Like *Tanner,* *Gaglia* was not decided until several years *after* the mortgage had been granted and it interpreted the Code rather than the former Act.

These considerations indicate that the first *Chevron* component strongly favors retroactive application of *Dewsnup* to this case.

The second component of the *Chevron* test requires a weighing of the "merits and demerits of each case" to determine the scope of the rule and to ascertain whether retroactive application would further or retard the new rule of law. *See Gruber*, 911 F.2d at 967.

The "purpose" of the rule in *Dewsnup* is to preserve the benefit of the mortgagor-mortgagee bargain:

> We think, however, that the creditor's lien stays with the real property until the foreclosure. *That is what was bargained for by the mortgagor and the mortgagee.* The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the *mortgagor-mortgagee bargain.* (Emphasis added.)

—— U.S. at ——, 112 S.Ct. at 778.

Retrospective application of *Dewsnup* to this case would retard the purpose of *Dewsnup* whereas retroactive application would advance it. Were it to be applied only retrospectively, Housing would be deprived of the benefit of the bargain which it struck with debtors when they granted them a mortgage on their residence in exchange for money with which to purchase said residence. Housing undoubtedly expected that its lien would remain in effect until payment in full or foreclosure, regardless of whether the value of the residence might be less than the amount of the lien. Retrospective application of *Dewsnup*, by contrast, would advance its purpose by preserving the mortgagor-mortgagee bargain.

In other words, the second *Chevron* component detailed previously also supports retroactive application of *Dewsnup* to this case.

The third and final component of *Chevron* requires an assessment of the probability of substantial inequity were *Dewsnup* to be applied retroactively to a case. This final consideration overlaps to a large extent with the first component so that if debtors had reasonably relied on *Gaglia* to their detriment, it would be inequitable to apply *Dewsnup* retroactively. *See Juzwin*, 900 F.2d at 696.

There would be no real risk of substantial inequity to debtors if *Dewsnup* applied to this case. As has been noted, debtors did not reasonably rely to their eventual detriment on § 506(d) or the rule in *Gaglia*. The prevailing law at the time that they granted Housing the mortgage did *not* permit liens to be "stripped down". Subsequent cases, such as *Gaglia*, could not have been relied upon by debtors because those cases presumed to interpret a statute which did not take effect until long *after* the mortgage had been granted.

Moreover, it would be inequitable *to Housing* were *Dewsnup* to be given only prospective application. Housing would be deprived of the benefit of the bargain it struck with debtors when the mortgage was granted were debtors permitted to "strip down" Housing's claim to the value of debtors' residence during bankruptcy.

Further, a broad based view of the proceeding clearly shows the debtors have substantially gained as a result of these proceedings. As has been stated, debtors had three (3) mortgages encumbering this realty as of the date of this filing. It goes without saying that they borrowed and utilized funds from the second and third mortgagee. However, as a result of fortuitous timing and changes in the law, these debtors have secured the benefit of the bargain while discharging their obligations. Certainly these debtors have not been inequitably handled. To the contrary, the second and third mortgagees bear the scars of this happenstance.

Like the other two components of *Chevron*, the third also supports retroactive application of *Dewsnup* to the present case.

### B.) *The Value of Debtors' Residence.*

One final matter remains to be addressed.

Although both sides conceded that *Dewsnup*, if it applies, would require entry of judgment in favor of Housing, debtors asked that the court also determine the value of their residence and decide whether that value is greater or less than the amount of Housing's lien. Debtors indicated to the court that they intended to appeal an adverse decision on the *Dewsnup* issue and argued that judicial economy would be served if the court also determined these issues at this time. The court's willingness to address this matter should in no way be construed as anything less than clear conviction that the *Dewsnup* holding must be given retroactive application.

Debtors purchased their residence in 1978 for $34,000. The amount due and owing to Housing as of April 22, 1991 was $31,870.92. Although debtors swore under oath in the schedules appended to their bankruptcy petition that the realty's value was $35,000, debtors now allege that said property has a value of only $17,500. Accordingly, debtors aver that the portion of Housing's claim which exceeds $17,500 is unsecured pursuant to § 506(a).

Housing denies that the property is worth only $17,500 and claims that it is worth $28,400.

Both sides presented expert testimony as to the value of the property. The court has carefully reviewed the testimony and finds the testimony that said property has a value of $28,400 to be more credible than the testimony that it is worth only $17,500.

Debtors' expert relied heavily upon certain curious factors in arriving at his estimate of value. For instance, he made much of the fact that the neighborhood in which the property is located is flood prone. However, he admitted that the property is situated on a terrace at least two or maybe three levels above the creek. Debtors' property has never been damaged by floods. Only properties situated below debtors' were actually flood prone.

Also, debtors' expert made much of the fact that the foundation of the house was not "good". Specifically, he noted that the living room was supported by wooden joists and was "sitting on rocks". However, he also testified that the house in all probability has been so supported since it had been built more than fifty (50) years ago and conceded that he had not detected any settling or damage to the joists. If debtors' home was going to settle due to its foundation, it certainly would already have done so.

Finally, debtors' contention that their residence is located in a neighborhood where property values are in serious decline is erroneous. The property is located in close proximity to a new state-of-the-art air terminal which is under construction at this time. Their property has increased in value as a result and can be expected to appreciate even further in the future.

In contrast, defendant's expert offered testimony which appeared clear and credible and the comparable sales upon which his position was based are, at the very least, acceptable and appropriate. The court finds that the present value of the property which is secured by Housing's lien is $28,400.

An appropriate Order shall be issued.

## ORDER OF COURT

AND NOW at Pittsburgh this 16th day of April, 1992, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that judgment is entered in favor of defendant Housing Mortgage Corporation and against plaintiffs/debtors Frank E. Jablonski and Sandra L. Jablonski.

In addition, the court hereby determines that the value of debtors' residence is $28,400.